Judge Chbnshaw
delivered the opinion, of the Court.
William Ellis, in the 10th clause of his will, makes ...... ... the following provision: “ It is my wdl and desire that the farm on which I now live be sold, and all the *480 residue of my estate which is not named in this will, and the proceeds to be equally divided amongst all my children, except my son, Ottoway’s, and my daughter, Nancy’s part — their portion shall remain in the hands of my executors to be disposed of as they may think best for them and their heirs.”
A testator denied his property to be sold and proceeds divided a Aft tin part coming to his son. to ie-main in the hands of his executor to be disposed of by him as he may deem best for the son and his heirs— Held that this Jund was subject to the payment of the debts of the son by the chancellor, ft Slat. Law, 302.)
*480 It appears that a sale of the property directed by the will to be sold was made, and that Spencer C. Graves, one of the executors, has in his hands, as the portion of Ottaway Ellis, the sum of $650.
The complainants, having recovered a judgment against Ottoway, sued out execution thereon, which was returned nulla bona. They.then filed this bill to subject to the satisfaction of their demand the interest of Ottoway, derived from his father under the foregoing clause of his will, and which is in the hands^ of said Graves as executor.
The Circuit Court dismissed the bill, and, in this, it is complained that the Court erred.
The only question presented for our consideration, is, whether the fund in the hands of Graves as trustee can be appropriated by the chancellor for the payment of the demand of the complainants against Ottoway Ellis. Ottoway does not resist the application of so much of the fund by the chancellor, as may be necessary to extinguish the claim set up against him. But the trustee opposes the relief sought, and insists that, by the direction of William Ellis in his will, it is his right and duty to hold the fund in his hands, and pay out the interest thereon for the support of Ottoway Ellis and his family.
If it was the intention of the testator, as it may have been* and probably was, to place the portion which he bequeathed to Ottoway in the hands of trustees, in order to secure it from liability for his debts, contracted by himself, and to prevent its being squandered and wasted by a prodigal son, he has not been successful in devising a mode by whieh to effectuate that intention. A testator cannot, nor can any one, according to our *481 laws, vest property or funds in trustees for the use of another, without subjecting it to the debts of the cestui que trust. By so doing, if the thing vested in the trustees be property, it is liable for the debts of him for whose use it is held, by virtue of the 13th sec., of an act of 1796, (Isi, Stat. Laws, 443,) and if the thing, so vested, be money, it is, in like manner, liable on a return of nulla bona upon an execution on a judgment, to the debts of the equitable proprietor, by virtue of the 6th sec., of an act of 1821, (1st Stat. Laws, 302.)— See Pope’s Exec’rs vs Elliott & Co.. (8 B. Monroe, 62.)
A slave convened to one in trust the proceeds oí Ms hire to be ap plied to the maintenance of another durins his life: Held that the interest of the cestui que trust was liable to sale under execution: (3 Bibb 3 86,) See Cosby &o., vs Furgurson 6 J. J. mar. 264 where the chancellor sub-lected the properly of the trust estate: Pope’s Executors Elliot & Co., (8 B. M. 66.)
In the case of Eastland vs Jordan, (3 Bibb, 186,) it appears that “ a negro boy was transferred to Jordan, in trust, that the proceeds of his hire should be applied to the maintenance of Goodrich Lightfoot, during his life.” And, although by the terms of the deed of trust, no express use was given to Lightfoot in the boy himself, but only a declaration made, that the “proceeds of his hire” should be applied to the maintenance of Light-foot, yet, the Court seems to have regarded the boy himself as held by the trustee for the use and benefit of Lightfoot, and decided that he was liable to be taken and sold under execution for the debts of the cestui que use, by virtue of the act of 1796.
In the case of Cosby, &c. vs Ferguson, (3 J. J. Marshall, 264,) the facts appear to be, that Lytle executed to Thomas Prather in trust for Cosby and his family, his notes for $30,000; and Cosby made a deed of trust to Prather and others, transferring these notes for $30,-000 to them, in trust, among other things, for the benefit of himself and family—the interest to be appropriated to the maintenance and use of his family and himself during their lives.
Ferguson having obtained a judgment against Cosby, and a return of nulla bona, upon an execution which issued thereon having been made, filed his bill in chap-eery to subject the trust estate, or the interest of Cosby therein, to the satisfaction of his judgment.
*482 In the former of these two cases, the property itself was made subject to creditors, and not its profits ; and, in the latter case, (it not being necessary, as the Court say, to determine the extent of Cosby’s interest,) the •annual value of his interest was subjected to the pay ment of the demand set up against him:
The case of Pope's Ex'ors vs Elliott & Co., (8 Ben. Monroe 56,) is in harmony with these two cases. Elliott Co., filed their bill in chancery to reach what they alleged to be a life estate of great value, which Robert Pope haddately received under his father’s will. It turned out that William Pope, the father of Robert, after making some specific devises, gave -all the residue of his estate to his executors to be disposed of 'in a manner particularly directed in his will. By the-sixth clause of his will, the testator directed his executors, or the survivor of them, to place at interest — the in-derest to be paid semi-annually — a sum sufficientto produce three hundred dollars per annum, which interest they were to appropriate to the support of his son, Robert, so long as he should live; and this sum of three hundred dollars per annum was to be appropriated in instalments of $25.per month for his support.— The Court say that, “such a devise or bequest, is obviously different from a devise of property or money in trust, for the use and benefit of an individual, and from a devise-of specific property in trust, to apply the pro-meeds or profits to his support. These devises give a • direct interest in some specific subject, or in a particular sum oí money. The direction, that the executors, having a large estate of the testator, shall, among oth•er things, support a particular individual out of the •means.in their hands, gives to the beneficiary no such •interest.” And in this case the Court subjected to the •claim of Elliott & Co., the accumulations of interest ■in the hands of the trustee for the maintenance of Robert Pope beyond what had been necessary for his support.
Where-b'y a deed' oí trust or other instrument, a beneficial entered in property or a fund ís giren, or in its issues and profits, is created, in terms oj by implication, for cestui que trust, the - property or fuñá-is liable to the demands-of cred'-r itors.
In the case under consideration, the testator gave bis son, Ottoway, a direct interest in the thing bequeathed. He directed, that the farm on which he lived, and all the residue of his estate which had not been previously mentioned in his will, should be sold, and the proceeds equally divided among his children— li the portion of his son, Ottoway, and of his daughter, Nancy, to remain in the hands of his executors to- be disposed of as they might think best for them and their heirs.” Here is an unequivocal declaration that the distributive share of Ottoway was to be his—to remain, it is true, in the hands of trustees to-be disposed of as they might think best for Ottoway and- his heirs —but still,- the fund is, equitably, the fund- of Otto-way. .
The fact' that the executors have the right conferred upon thennby the terms of the'W-ill, to dispose of the fund as they might think best for Ottoway and his heirs doesmot impair the rights- of creditors in regard to it. The- only question is, has Ottoway Ellis an equitable right to the fund ? Is it in equity his? If so, it is subject to the claims of his-creditors, by virtue of our statutes.-
We consider the true principle under our statutes to be, that, where by a deed of trust or other instrument, a beneficial interest in the property or fund, or, in its issues or profits, is created in terms or by implication, for the cestui que trust, the property, or fund, or its profit, is liable to the demands of creditors.-
The discretion which is given to the executors by the terms of this will, amounts to no more than what results by implication, in- all cases of trusts for the use and benefit of third persons. The discretion is properly and prudently to be exercised by the trustees in-this, -and all other cases for the use'of the beneficiaries, else the chancellor will compel them to do- so, and even remove them, if necessary, to secure the just application, and proper management, of the trust property or fund.
Duvall for plaintiffs ; Kinkpad ¿y- Breckinridge for defendants.
It results thal the Court below erred in dismissing the bill. Wherefore the decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.